STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ALETHEA M. SARGENT (CABN 28822)
ILHAM A. HOSSEINI (CABN 256274)
ANNE HSIEH (CABN 288159)
Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (510) 637-3924
      FAX: (415) 436-7234
      alethea.sargent@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CASE NO. 21-cr-281 VC** |
| Plaintiff, | **UNITED STATES' BRIEFING ON COUNT THREE** |
| v. | |
| KENNETH ORLANDO SPARKS, | |
| Defendant. | |

The Court has requested briefing on a series of interconnected issues pertaining to Count Three, the charge under 18 U.S.C. § 2422(b). As the Court is well aware, the underlying conduct that the Government has endeavored to prove is that the defendant sent a series of text messages in which he induced the victim to produce and then send to him videos of herself either urinating or defecating by offering her money for such videos. Because the context of the texts is sexual and the texts between the defendant and the victim refer to the activity as "our dirty little secret," the Government contends that the activity involved sexual gratification. During the trial, the defense has referred to this conduct as "scatological pornography." That course of conduct involved both the production and the distribution/receipt of child pornography; indeed, the exchange could not have taken place but for the

UNITED STATES' BRIEFING ON COUNT THREE    1
21-cr-281 VC

production, because the defendant directed the victim to include certain details in the child pornography.[1]

For the reasons set forth below, the Government posits that the conduct charged in Count Three – which involves the defendant's active "exchange" of child pornography with a minor as prohibited in California Penal Code section 311.3 – can constitute sexual activity as set forth in 18 U.S.C. § 2422(b) and does in this case because it involves an "active pursuit" of libidinal gratification.  To the extent the Court disagrees, the inclusion of reference to section 311.3 in the indictment does not render the count defective under *United States v. Lopez*, 4 F.4th 706 (9th Cir. 2021), which clearly held that Section 2422(b) does not require the Government to indict a specific predicate offense.  The Court can cure any issue it finds with the reference to section 311.3 by instructing the jury using California Penal Code section 311.4(c), a statute that penalizes the production of child pornography (a crime that Congress has expressly stated qualifies as "sexual activity" under Section 2422(b), *see* 18 U.S.C. § 2427) and that also (in addition to Penal Code section 311.3(a) criminalizes the course of conduct the Government has indicted and proven at trial.

## I.      RELEVANT LAW

Section 2422(b) subjects to criminal sanction anyone who "knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense . . . ."  18 U.S.C. § 2422(b).  "From the text of the statute, the elements of criminal liability are manifest: a person must 'knowingly' (1) actually or attempt to (2) persuade, induce, entice, or coerce (3) a person under 18 years of age (4) to engage in sexual activity that would constitute a criminal offense."  *United States v. Meek*, 366 F.3d 705, 718 (9th Cir. 2004).

The Ninth Circuit has construed the element of "any sexual activity for which any person can be charged with a criminal offense" broadly, as encompassing any "sexual conduct that would have constituted any criminal offense in one or more relevant territorial jurisdictions."  *United States v.*

---

[1] Where the term "child pornography" is used in this brief, it is meant to include "child pornography" as defined under California law, which is more expansive than the federal definition and specifically includes, depending on the statute, the terms "urination," defecation," and "excretory functions."

UNITED STATES' BRIEFING ON COUNT THREE     2
21-cr-281 VC

*Lopez*, 4 F.4th 706, 719 (9th Cir. 2021), *cert. denied*, 214 L. Ed. 2d 33, 143 S. Ct. 121 (2022). The element "must be applied 'to situations in which an individual could actually be prosecuted[,]'" *United States v. Tello*, 600 F.3d 1161, 1165 (9th Cir. 2010) (quoting *United States v. Dhingra*, 371 F.3d 557, 565 (9th Cir. 2004)), and the "criminal offense" for which any person can be charged may be either misdemeanor or felony crimes under federal or state law. *See United States v. Shill*, 740 F.3d 1347, 1352 (9th Cir. 2014) (declining to limit the phrase "a criminal offense" in Section 2422(b) to felonies because the plain meaning of the statute supports no such limitation). "Section 2422(b) does not require the Government to allege a specific predicate offense or to prove that the relevant court would have had jurisdiction over the defendant for the commission of such offense, so long as the Government proved the defendant's proposed sexual conduct would have constituted "a criminal offense" under the laws of an applicable territorial jurisdiction." *Lopez*, 4 F.4th at 723.

In *United States v. Taylor*, 640 F.3d 255 (7th Cir. 2011), the Seventh Circuit determined that "sexual activity" under section 2422(b) is synonymous with "sexual act" as defined in § 2246(2), and requires interpersonal contact. *See id.* at 257 – 60. However, the Ninth Circuit, along with the Fourth and Eleventh Circuits, have all explicitly rejected *Taylor*'s analysis and holding. In *United States v. Fugit*, the Fourth Circuit persuasively explained why *Taylor* was mistaken in its statutory analysis of section 2422(b), and held that "the phrase 'sexual activity' in § 2422(b) denotes conduct connected with the 'active pursuit of libidinal gratification' on the part of any individual—nothing more, nothing less— and, therefore, does not incorporate an invariable requirement of interpersonal physical contact." 703 F.3d 248, 254–56 (4th Cir. 2012). In *United States v. Dominguez*, 997 F.3d 1121 (11th Cir. 2021), the Eleventh Circuit reached a similar conclusion. *Id.* at 1123 ("sid[ing] with the Fourth Circuit and hold[ing] that 'sexual activity' under § 2422(b) does not require actual or attempted physical contact between two persons").

While the Ninth Circuit has not expressly defined the term "sexual activity" under section 2242(b) in the same way these other circuits have, it *has* explicitly rejected the reasoning in *Taylor* and declined to follow its narrow construction of Section 2242(b), stating,

> [W]e conclude that the concerns of the Seventh Circuit in *Taylor* are mitigated when the phrase is read in the context of the statute as a whole. The phrase "any sexual activity" is modified by the statutory language immediately preceding and following it; § 2422(b) does not criminalize

> "flashing," for instance, when such behavior is not accompanied by the use of a means of interstate commerce. Again, without any basis in the text to limit § 2422(b) to felony conduct, we refuse to read the statute so narrowly.

*United States v. Shill*, 740 F.3d 1347, 1353 (9th Cir. 2014). Furthermore, the Ninth Circuit has repeatedly upheld Section 2422(b) convictions based on the allegation of sexual grooming-type behavior prohibited under state law as the predicate "sexual activity." *See, e.g. United States v. Goetzke*, 494 F.3d 1231, 1235 (9th Cir. 2007) (holding "the evidence was sufficient to find that Goetzke intended to persuade, induce, entice, or coerce W to engage in unlawful sexual activity" when "[i]n his letters, Goetzke made advances of a sexual nature—telling W that he was a 'cute young man,' suggesting an exchange of pictures, describing how he liked giving W a backrub and wanted to rub his 'nice butt,' advising W how to stimulate himself, and expressing the desire to see W naked and to 'put your peter in my mouth.'"); *Meek*, 366 F.3d at 710 (upholding section 2422(b) conviction where defendant, via AOL instant messenger, "engage[d] in a sexually graphic conversation with [an individual he believed to be a minor boy], discussing the possibility of a future sexual encounter" and "stating he wanted to see the boy's 'smooth chest,' describing sexual acts, and explicitly referring to the minor as 'a young b.'").

## II.    ANY PREDICATE ALLEGED IN THE INDICTMENT IS SURPLUSAGE AND DOES NOT BIND THE GOVERNMENT

Here, the Government has alleged a violation of a California statute (Cal. Penal Code § 311.3) criminalizing the knowing exchange of pornographic footage of a minor as the underlying "sexual activity for which any person can be charged" element for Count Three of the Superseding Indictment. However, under *Lopez*, the Government was not required to cite any "predicate offense" or statute at all. *See* 4 F.4th at 720 (holding that 18 U.S.C. § 2422(b) "requires proof that the defendant's persuasive communications described sexual conduct that could be charged in at least one relevant territorial jurisdiction but does not require the Government to indict a specific predicate offense or to prove a governmental entity would have had jurisdiction to prosecute the defendant for such predicate offense."). Thus, the Government was not required here to set forth California Penal Code 311.3, or any other specific criminal statute, as the underlying "sexual activity for which any person can be charged" for the purposes of 2242(b), and any such language in the indictment was surplusage. Furthermore, *Lopez* confirms that, so long as the underlying sexual activity proven at trial is, in fact, criminal conduct

in the state of California (or another jurisdiction where the defendant could actually be charged), the indictment's superfluous language does not undermine the prosecution.

In *Lopez*, the defendant, while in Guam, unknowingly communicated with an undercover agent posing as a thirteen-year-old girl and attempted to entice her by proposing in those communications multiple sexual acts. *Id.* at 712. Upon the defendant's being caught, a federal grand jury indicted him for a violation of 18 U.S.C. § 2422(b) by an attempt to entice a minor "to engage in sexual activity for which a person can be charged with a criminal offense, to wit: First Degree Criminal Sexual Conduct, in violation of 9 [G.C.A.] § 25.15(a)(1), all in violation of Title 18, United States Code, Sections 2422(b) and 2." *Id.* at 713. The specific Guam statute alleged in the indictment punished the actual sexual penetration of a minor under fourteen years of age as a completed offense. *Id.* However, because the defendant was communicating with an adult undercover agent, no sexual act violative of that particular statute ever could have been completed based on those communications. *See id.* at 718-719. Therefore, the elements of the predicate offense stated in the indictment could never have been proven. *Id.*

The *Lopez* Court held that this misstatement in the indictment did not undermine the charging document itself or the defendant's conviction at trial. This was because, the court held as a matter of first impression, 18 U.S.C. § 2422(b) does not actually require the Government to allege *any* particular predicate offense, and further because Guam did in fact have a separate criminal statute setting out attempt crimes, and that statute criminalized the defendant's actual conduct, that is, *attempted* sexual penetration of a minor under fourteen years of age.

In reaching the conclusion that 18 U.S.C. § 2422(b) does not require a predicate statute to be proven, the court in *Lopez* noted that it was significant that the statute repeatedly uses the word "any" and the indefinite article "a," to wit: "any facility," "any sexual activity," "any person," "a criminal offense." *Id.* at 721. The indefinite article has "generalizing force," and the word "any" bears the "expansive meaning of one or some indiscriminately of whatever kind." *Id.* at 721. The Court noted that the "breadth of Section 2422(b)'s language is intentional, and we must take Congress at its word by declining artificially to narrow the scope of predatory communications subject to the statute." *Id.* Based on this reasoning, the Court held that the statute does not require the Government to indict a specific predicate offense or to prove hypothetical jurisdiction over any such offense, because such a

requirement would unduly constrain the statute's scope. *Id. See also United States v. Jockisch*, 857 F.3d 1122, 1131–32 (11th Cir. 2017) (same); *United States v. Hart*, 635 F.3d 850, 855–56 (6th Cir. 2011) (same). The Court further explained, using the RICO Act as its example, that Congress does know how to impose a predicate offense requirement and did not do so in Section 2422(b).

Based upon this, the indictment's specific reference to the erroneous Guam statute was "mere surplusage." 4 F.4th at 726. "Gratuitous language in an indictment cannot bind the Government to proving elements not required for conviction pursuant to the applicable criminal statute." *Id.* The Ninth Circuit further determined that, given that the course of conduct put forward at trial, and at least suggested by the erroneous reference to the wrong statute, that there had been no constructive amendment – which requires either that the facts presented be "distinctly different from those set forth in the charging document such that the defendant lacked notice" or that "the crime charged was substantially altered at trial so that it was impossible to know whether the grand jury would have indicted for the crime actually provided." *Id.* at 727. On the contrary, the exact same set of facts noticed by the indictment was proven at trial. The court explained that, at most, there had been a variance because "the evidence offered at trial proves facts materially different form those alleged in the indictment" – in *Lopez*, that the defendant could only attempt to engage in sexual activity with someone he thought was under fourteen rather than actually engage in sexual activity with someone actually under fourteen years old.

However, although the statute did not require a predicate offense to be alleged, it nonetheless did require that, should the sexual activity take place, a person – here, the defendant – could be charged with a crime. Looking to Guam law, the Court determined that it was clear that under Guam law the course of conduct that was the basis for the indictment, which was specifically gestured at, if inaccurately, by reference to the erroneous Guam statute, and which was actually put forward at trial was rendered criminal by Guam's attempt statute. In other words, if the proposed sexual activity had taken place, the defendant would have *attempted* to violate 9 G.C.A. § 25.15(a)(1), because he thought he was communicating with a thirteen-year-old girl, but he would not actually have violated it because his interlocutor was in fact an adult. Therefore, the statute's requirement that "a criminal offense" would have been or had been violated had been met.

## III.    THE CONDUCT TO BE PROVEN AT TRIAL CONSTITUTES CRIMINAL SEXUAL OFFENSES UNDER BOTH CALIFORNIA PENAL CODE SECTIONS 311.3 AND 311.4

The situation at hand is similar to *Lopez*, and the same outcome should result so long as the underlying conduct in fact constitutes a crime in California.  And it does: the conduct is prosecutable under both California Penal Code section 311.3(a) *and* 311.4(c).

### A.    The underlying conduct constitutes a crime under California Penal Code 311.3 and constitutes "sexual activity" under Section 2242(b)

As relevant to the conduct at issue in this case, California Penal Code section 311.3(a) prohibits a person from "knowingly … exchang[ing] any representation of information, data, or image, … that contains or incorporates in any manner, any film or filmstrip that depicts a person under the age of 18 years engaged in an act of sexual conduct," where "sexual conduct" includes "[d]efecation or urination for the purpose of sexual stimulation of the viewer."  Penal Code section 311.3(a) & (b)(6).

As relayed above, Ninth Circuit has construed the element broadly and rejected *Taylor*, although it has not specifically defined "sexual activity."  Under the relevant caselaw, the "knowing[] exchange" of child pornography can reasonably be understood to constitute "sexual activity" – if defined to mean the "active pursuit of libidinal gratification," the definition used by the Fourth Circuit in *Fugit*, which the Government finds persuasive. *Fugit*, 703 F.3d at 255-256.  A defendant's primary motivation for exchanging child pornography (particularly, with a minor victim) is very often the pursuit of his own libidinal gratification, as demonstrated by the facts of this case.  The fact that Penal Code section 311.3(f) specifically excludes from the statute "matter that is unsolicited and is received without knowledge or consent through a facility, system, or network over which the person or entity had no control" – which eliminated the possibility of the receipt being a passive rather than an "active pursuit" – firmly supports the intuition that "knowing[] exchange" is meant to describe conduct that takes place for the purpose of "sexual gratification."  So does the fact that the definitional provision specifically relevant to this case includes the phrase "for the purpose of sexual stimulation of the view" – that is, the recipient of the image that was exchanged.  In other words, the statutory language by its terms requires an "active pursuit of libidinal gratification" – "active pursuit" by the exclusion of passive receipt, and

"libidinal gratification" by the requirement for sexual stimulation.

Not only do the terms of the statute require "active pursuit of libidinal gratification," but the factual conduct the Government has thus far put forward at trial clearly shows this as well. In the Government's view, there is no question based on the facts of the case that the conduct at issue here was connected to the "active pursuit of libidinal gratification." There was active pursuit, in that the defendant actively engaged the victim in these exchanges of child pornography, asking her for the videos, directing her on what to do, receiving them from her, and paying her for them almost contemporaneously and in short order. Factually, this is quite different from someone who sets up his computer to "passively" download child pornography that was previously produced by other entities and circulating. The conduct here falls squarely within what is proscribed by 2242(b). And there was libidinal gratification, as evidenced by the facts put on so far. The defendant's initial request to the victim says: "U gone send pics of everytime u with ppl and use the bathroom?" In other words, he indicates a parallel interest in watching videos of the victim having sex and using the bathroom. Five minutes later, he sends her a picture of his own penis. Other text messages, between the defendant and a third party, discuss the occasional defecation that accompanies anal sex with interest. And the defense even on voir dire fronted the fact that the case would involve "scatological pornography" – the Oxford definition of pornography being "printed or visual material containing the explicit description of sexual organs or activity, intended to stimulate erotic rather than aesthetic or emotional feelings." Just because the layman's understanding of sexual activity might not encompass excretory functions, and, indeed, the fact that such functions in the vast majority of instances have nothing to do with "libidinal gratification" whatsoever, does not render them outside the bounds of libidinal interests, which the inclusion of excretory functions in the definition of sexual conduct in the California statute makes clear.[2]

In short, the Government believes that trying Count Three with California Penal Code section 311.3(a) is legally valid and the Court need not diverge from that predicate offense.

---

[2] The only other plausible explanation for the defendant's requests would be that the defendant is exerting or demonstrating power over the victim in making the request, but as has been discussed extensively this is not the Government's theory of the case and as the Court is well aware the Government does not intend to – and has not – put on evidence of coercion. The victim's reference to these videos as their "dirty little secret" also suggests a libidinal motivation for the videos, rather than a coercive motivation.

UNITED STATES' BRIEFING ON COUNT THREE    8
21-cr-281 VC

**B.     The underlying conduct constitutes production of child pornography, which is a crime under California Penal Code 311.4 and squarely qualifies as "sexual activity" under Section 2422(b)**

If the Court is concerned that "exchange," even where "knowing," does not rise to the level of an "active pursuit," the Court could alternatively instruct the jury with California Penal Code section 311.4, California's production of child pornography statute.  The creation or direction (i.e. production) of the videos, which the government has endeavored to prove in its case, squarely qualifies as sexual activity under the statute – which is made clear by the explicit call-out of production of child pornography as a possibly predicate for enticement in 18 U.S.C. § 2427 (proving that "In [the] chapter [in which 18 U.S.C. § 2427 is located], the term "sexual activity for which any person can be charged with a criminal offense" includes the production of child pornography[…].").  This makes sense.  In creating pornography – in preserving a visual record of sexual activity to be played again and again – one is undoubtedly engaged in an "active pursuit," and it also seems that that "active pursuit" unquestionably involves "libidinal gratification."  The fact that 18 U.S.C. § 2427 explicitly provides that the federal child pornography production statute may constitute "sexual activity" for purposes of 18 U.S.C. § 2422(b) supports this conclusion.  Even in the case of a commercial pornography studio, the pornography generated would be for purposes of "libidinal gratification" – just not necessarily that of the director, as opposed to the consumer.  And, as the Court is aware, the evidence here indicates that the videos are not being produced with an aim for profit but rather for personal use – the defendant's only interest in this excretory pornography appears to be libidinal.

Under California Penal Code 311.4, which is California's child pornography production statute, it is a crime to "employ" or "use" (among other verbs) a person one knows to be under 18 "to engage in or assist others to engage in either posing or modeling alone or with others for purposes of preparing any representation of information, data, or image, including, but not limited to, any film, … involving sexual conduct by a minor under the age of 18 years alone or with other persons …," where "sexual conduct" is defined to include "excretory functions performed in a lewd or lascivious manner."  California Penal Code section 311.4(c) & (d)(1).  Here, the defendant enticed the victim to film herself, a minor, posing and modeling for videos of herself performing excretory functions in a lewd or lascivious manner.  As a result of the activity, the defendant could have been charged with violating Penal Code section 311.4(c),

because he "employ[ed]" and "use[d]" her to model for those videos.

The holding in *Lopez* clears the way for the prosecution to pivot away from the predicate statute specifically alleged in the indictment to another unenumerated statute. Indeed, even in *Tello*, the Ninth Circuit affirmed a defendant's conviction under § 2422(b) for inducing sexual activity that could constitute other unenumerated crimes under California law (such as "Lewd Act Upon a Child Under the Age of 14 Years, a violation of California Penal Code Section 288; Oral Copulation, a violation of California Penal Code Section 288a; and Unlawful Sexual Intercourse with a Person Under the Age of 18 Years, a violation of California Penal Code Section 261.5"). 600 F.3d at 1165. Here, the conduct the Government called out through the superfluous indictment language – the exchange of videos of the victim urinating or defecating for the defendant's sexual pleasure – necessarily included as a prerequisite the victim's modeling or posing for videos of that behavior. In fact, the defendant's text messages to the victim gave her very particular instructions as to what should go into those videos: not only should they contain her "pooping or peeing," but that the videos should allow the viewer to "see it coming out" (i.e. depict either excretion of urine from the penis or feces from the anus) and should "prove it was from u" (i.e. reveal the victim's identity in some way).[3] Those were directorial instructions that necessarily required that the videos in question be made specifically for purpose of the exchange. Moreover, because on the facts of this specific case there is a one-to-one correspondence between the facts necessary to prove "exchange" and "production," such an instruction would not amount to a constructive amendment.

If anything, the Government's surplusage – the reference to California Penal Code section 311.3 – is even less problematic than the surplusage in *Lopez*, because whereas here the defendant's conduct factually constitutes a violation of Penal Code section 311.3(a), in *Lopez*, a violation of the called-out statute was a factual impossibility. For that reason, not only (as in *Lopez*) would the shift from one statute to another as the contemplated "criminal offense" *not* constitute a constructive amendment, but

---

[3] The following text messages by the Defendant regarding these videos (among others) have thus far been admitted: "Can you send a video of u pooping or peeing that would be cool," *see* Exhibit 44 at 68 (previously admitted); "send pic or vid of pee . . . or poop," *see* Exhibit 44 at 75-76; "ok but u gotta be able to prove it was from u," *see* Exhibit 44 at 76; "yea that's cool I wanna see it coming out tho babe too," *see* Exhibit 45 at 4 (previously admitted); "yea that works it came out cool [videos] I sent it [money]," *see* Exhibit 45 at 6.

UNITED STATES' BRIEFING ON COUNT THREE     10
21-cr-281 VC

(unlike in *Lopez*), such a shift could not even constitute a variance, because the evidence offered at trial has proven the *exact same facts* as those alleged in the indictment.[4]  And the reference to 311.3(a) provided the defendant ample notice of that conduct, given that a key distinction between California child pornography statutes and federal pornography statutes is that they encompass excretory functions.

In short, even if the Court decides that California Penal Code section 311.3(a) is not a legally valid predicate offense, Count Three is not lost because the Court can instruct using California Penal Code section 311.4(c) under *Lopez*.

## IV.     THE GOVERNMENT'S PROPOSED INSTRUCTION

*Lopez* instructs that, although the Government need not allege a predicate statute for 18 U.S.C. § 2422(b) in an indictment, the jury must find that a criminal offense actually could have been charged based on the "sexual activity" that took place.[5]  4 F.4th at 731.  In *Lopez*, the Ninth Circuit held that a vague reference in jury instructions to the "laws of Guam" did not give the jury sufficient tools, in terms of defined terms, to be able to fairly reach a verdict fulfill this task of fairly reaching a verdict.  As the court explained:

> To be clear, the burden was on the district court, not the Government, to instruct the jury on the requirements of applicable federal, state, and territorial laws. Federal courts may take judicial notice of matters of public record, including statutes. *See* Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Once the Government adduced evidence that Lopez proposed sexual conduct to a minor, the jury was required to determine whether the sexual conduct was considered criminal in Guam or another territorial jurisdiction. Prior to jury deliberations, it was incumbent upon the district court to ensure the jury possessed the requisite background knowledge to evaluate the sufficiency of the Government's evidence against applicable criminal laws. The failure to do so was error.

*Id*.  Here, then, any instruction must include a sufficient definition of the criminal conduct set forth in California Penal Code section 311.4(c) for the jury to make a determination whether the conduct at issue might have resulted in a person being convicted of that offense.  However, while that definition must be

---

[4] Notably, the defense has repeatedly insisted on stipulating to this conduct.  *See* Stipulation #18 noting that the videos depict Ms. Garcia urinating and defecating "for the purpose of sexual stimulation of the defendant, pursuant to California Penal Code 311.3."  *See* Exhibit 250 at 4 (previously admitted into evidence and read to the jury).

[5] The Government notes that although the parties discussed with the Court that the language "any person" may encompass, for example, the victim, the Ninth Circuit in *United States v. Lopez* takes a different view of that language.  The *Lopez* court held that the "any person" language merely relieves the Government of having to prove the underlying crime (instead, it is the Court's job to instruct that certain activity would be a crime); the court appears to operate under the assumption that that "person" ultimately must be the defendant.  The Government has not developed a position on this question.

included in the statute, the Government suggests that the phrase "sexual activity" not be defined for the jury. This is because it is not actually for the jury to decide whether the conduct prohibited by the predicate statute is "sexual activity" for purposes of 18 U.S.C. § 2422(b). The Government's view is that it is a legal decision that the Court should make prior to instructing the jury whether the conduct at issue – either the knowing exchange of film depicting a minor defecating or urinating for the viewer's sexual pleasure or the production of child pornography depicting excretory functions – is legally "sexual activity," and that the jury's role is to determine whether the victim was enticed, what conduct resulted from that enticement, and whether that conduct was in violation of California law. The fact that the Court has found it necessary to sua sponte bring this issue to the parties' attention and request briefing on it intuitively demonstrates that to be true.

For its proposed instruction, the Government has used the model instruction as its framework and believes it adequately instructs the jury as to the necessary elements. Taking the proposed instruction utilizing 311.4(c) as an example, the first paragraph includes most of the factual findings the jury must make: first, as to the federal statute, 1) whether there was interstate commerce and 2) whether there was enticement; and, second, as to the state statute that forms the framework of illegality (which the Court will have already found describes "sexual activity"), 1) whether there was the employment or use of a minor, 2) whether that minor was used to pose or model, 3) whether there was a film, and 4) whether the film involved sexual conduct, including exhibition of the genitals or rectal area for sexual stimulation of the viewer or alternatively excretory functions performed in a lewd or lascivious manner. The second paragraph informs the jury that should it find that the facts related to California law stated in the first paragraph, the law in California has been violated. The third paragraph specifies that the enticed individual must be a minor. And the fourth paragraph states the defendant's knowledge of age requirement.

To the extent the instruction is wordy, the government is amenable to reducing or simplifying the language so that it is tailored to the facts of this case while still being legally consistent with the statutes at hand. For example, the "sexual activity" described in Penal Code section 311.4(c) is the "use" or "employment" of a minor to engage in posing or modeling in child pornography. Under the facts of our case, the victim essentially was enticed to "use" or "employ" *herself* to engage in that posing. Because

UNITED STATES' BRIEFING ON COUNT THREE    12
21-cr-281 VC

the concept of "using" or "employing" oneself may be unduly confusing to the jury, those initial verbs may be struck from Element 1.

***Using 311.3(a) As the Predicate Offense:***

The defendant is charged in Count Three with Enticement of a Minor. For the defendant to be found guilty of that charge the government must prove beyond a reasonable doubt:

First, that the defendant used a means or facility of interstate foreign commerce, that is a cellular phone,[6] to knowingly persuade, induce, or entice Ms. Garcia to engage in sexual activity, that is, the knowing exchange of any representation of information, data, or image, including, but not limited to, any film, that depicts a person under the age of 18 years engaged in defecation or urination for the purpose of sexual stimulation of the viewer; and

Second, that based upon the sexual activity that occurred, the defendant could have been charged with a criminal offense under the laws of California. In California, it is a criminal offense to knowingly exchange any representation of information, data, or image, including, but not limited to, any film, that depicts a person under the age of 18 years engaged in defecation or urination for the purpose of sexual stimulation of the viewer,

Third, the individual the defendant persuaded, induced, or enticed was under the age of 18.

Fourth, the defendant knew that the individual was under the age of 18 years old.

***Using 311.4(c) As the Predicate Offense:***

The defendant is charged in Count Three with Enticement of a Minor. For the defendant to be found guilty of that charge the government must prove beyond a reasonable doubt:

First, that the defendant used a means or facility of interstate foreign commerce, that is a

---

[6] The Government is concerned that simply using the phrase "the internet" to describe the mechanism over which the relevant text messages were exchanged, as the Court has done in its version, would require that the Government explicitly prove that text messages transmitted between phones travel over the internet as opposed to, say, cellular networks. The Government is not certain that this is accurate. The Government suggests that the words "or a cellular phone" be included.

UNITED STATES' BRIEFING ON COUNT THREE    13
21-cr-281 VC

cellular phone, to knowingly persuade, induce, or entice Ms. Garcia to engage in sexual activity, that is, the employment or use of herself, being a minor under the age of 18 years, to engage or assist others in posing or modeling alone or with others for purposes of preparing any representation of information, data, or image, including any film, involving sexual conduct by a minor, where sexual conduct includes exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer or excretory functions performed in a lewd or lascivious manner; and

Second, that based upon the sexual activity that occurred, the defendant could have been charged with a criminal offense under the laws of California.  In California, it is a criminal offense to employ or use a minor under the age of 18 years to engage in or assist others to engage in either posing or modeling alone or with others for purposes of preparing any representation of information, data, or image, including, but not limited to, any film, involving sexual conduct by a minor, where sexual conduct includes exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer or excretory functions performed in a lewd or lascivious manner,

Third, the individual the defendant persuaded, induced, or enticed was under the age of 18.

Fourth, the defendant knew that the individual was under the age of 18 years old.

## V.     THE EXISTING STIPULATIONS DO NOT EXACTLY MAP ONTO THE DEFINITION OF SEXUAL CONDUCT IN PENAL CODE SECTION 311.4

Should the Court find that conduct under California Penal Code section 311.3(a) cannot, as a matter of law, qualify as "sexual activity" under Section 2422(b), but permit the Government to proceed under the theory involving California Penal Code section 311.4(c), there is an additional (albeit minor) complication to consider and address:  that the existing stipulations do not map neatly onto the definition of "sexual conduct" set forth in Penal Code section 311.4, as opposed to Penal Code section 311.3.

Penal Code section 311.3(b) includes in its definition of "sexual conduct":

(5) Exhibition of the genitals or the pubic or rectal area of any person for the purpose of

UNITED STATES' BRIEFING ON COUNT THREE     14
21-cr-281 VC

sexual stimulation of the viewer.

(6) Defecation or urination for the purpose of sexual stimulation of the viewer.

Although the conduct at issue likely meets either of these definitions, definition (6) much more specifically describes the conduct.  Thus the stipulations agreed to by the parties describe defection and urination for the purpose of sexual stimulation of the viewer; they say nothing about any exhibition of the genitals, and they certainly say nothing about the lewd and lascivious nature of the performance.

This unfortunately may leave a gap based on the definition of "sexual conduct" applicable to Penal Code section 311.4.  That definition includes:

[1] exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer, … or [2] excretory functions performed in a lewd or lascivious manner.

Penal Code section 311.4(d)(1).  The parties stipulation contains a portion of each of these.  Specifically, it contains the purpose language from the first, and the excretory functions portion from the second.  But the jury has not seen sufficient evidence to fill in the rest of either of the definitions.  In the exhibits entered into evidence thus far, the jury cannot see that the videos involve the exhibition of the genitals or pubic or rectal area, and there has been no testimony on that subject, and there is absolutely no way to determine based on the small redacted thumbnails that are in evidence whether those were "performed in a lewd or lascivious manner."

The Government respectfully recommends that additional stipulations be adopted.  If the defense no longer wishes to stipulate on this issue, then the Government respectfully requests that the Court revisit its in limine ruling so that sufficient evidence can be presented to prove that the videos involved an exhibition of the genitals or pubic or rectal area, or that the excretory functions depicted were performed in a lewd or lascivious manner.  The Court's prior in limine ruling stated that the Government could not show the urination and defecation videos; could not show screenshots from the videos; could not describe the videos through witness testimony; and the stipulations could not be as descriptive as those the defense had offered:  "Any stipulation describing these videos should not exceed one or two sentences per video; it is enough to say that the videos are close-ups of R.G. urinating and defecating."  *See* Order, Dkt. 137 at 2.  Notably, the defense had offered very detailed and descriptive stipulations, but the Court did not permit such stipulations.  *See* Defense Stipulations offered on September 9, 2022, Dkt.

UNITED STATES' BRIEFING ON COUNT THREE    15
21-cr-281 VC

126 at 21-22 ("R.G. holds her non-erect penis in her left hand with thumb visible on the top of the penis just below the glans . . . her testicles become visible as does her rectum. Some hair is visible around the rectum. R.G. then crouches at the waist so her rectum is directly in the middle of the field of vision and R.G. then defecates.  Her testicles remain slightly visible during the defecation.  At about 10 seconds into the video the defecation begins and it pauses at 17 seconds. It then resumes about 0.20 seconds into the video. R.G. grabs either side of her buttocks with both hands and spreads her buttocks more after briefing glancing back at the camera. R.G. then defecates again on camera, and while backing up slightly to get closer to the camera. During the video the sphincter is seen contracting as the fecal matter is expelled from the body.").

Based on the prior in limine briefing and order, the government understands that the Court is likely not inclined to allow the Government to show these videos to the jury.  Instead, the Government renews its request to show a single full-page screenshot from each of the four videos,[7] or in the alternative, requests that the case agent, who is still on the stand on direct examination, be permitted to briefly describe the videos.  The Government also requests that it be permitted to notify the case agent that he may do so because he has previously been instructed not to do so in light of the Court's in limine ruling.  In an abundance of caution and to avoid any potential issues (given that the witness was not prepared to testify about the contents of the urination and defecation videos), the Government is also amenable to simply asking some leading questions, the wording of which can be stated to the Court in advance.

DATED:       3/16/23                                Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney


                                                               _____/s/_____
                                                               ALETHEA M. SARGENT
                                                               ILHAM HOSSEINI
                                                               ANNE HSIEH
                                                               Assistant United States Attorneys

---

[7] One exhibit showing text messages and two exhibits showing metadata include tiny redacted thumbnails.  Those thumbnails are too small for the jury to make much determination of what is taking place around the redaction, which covers the image content that is actually relevant to allowing the jury to make a determination on "exhibition" or "lascivious content" at any rate.

UNITED STATES' BRIEFING ON COUNT THREE     16
21-cr-281 VC