ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ILHAM A. HOSSEINI (CABN 256274)
ALETHEA M. SARGENT (CABN 288222)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7196
    Fax: (415) 436-7234
    ilham.hosseini@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. CR-21-281-VC |
| Plaintiff, | ) |
| | ) **UNITED STATES' SENTENCING** |
| v. | ) **MEMORANDUM** |
| | ) |
| KENNETH ORLANDO SPARKS, | ) Hearing Date: September 13, 2023 |
| | ) Time:      1:00 P.M. |
| Defendant. | ) Judge:    Hon. Vince Chhabria |
| | ) |
| | ) |

US SENTENCING MEMO
CR-21-281-VC

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................................1

II.     FACTS ...................................................................................................................................1

        A.      Procedural History ...................................................................................................1

        B.      Offense Conduct ......................................................................................................2

III.    SENTENCING GUIDELINES CALCULATION ...............................................................8

IV.     DISCUSSION ........................................................................................................................8

        A.      Applicable Law ........................................................................................................8

        B.      Recommended Sentence and Section 3553(a) Factors ...........................................9

        C.      Restitution ..............................................................................................................12

V.      CONCLUSION ....................................................................................................................12

US SENTENCING MEMO
CR-21-281-VC

## I.    INTRODUCTION

Over the course of ten months, the Defendant Kenneth Sparks drove to Merced to pick up a 15-year-old and drop her off in Oakland and San Francisco so she could stand on street corners and have sex with different strangers for money.  On one of those trips, while they were in the Bay Area, he booked a room in a motel where he recorded four videos of himself having anal sex with her.  Soon after they met, he learned that she was a minor.  Yet, he continued to facilitate in numerous ways her engaging in commercial sexual activity.  She was 15 to 16 years old over the course of their relationship, and she loved him.  She was destitute and she needed money.  Aside from providing transportation to and from Merced to the Bay Area, he coached her on how to prostitute herself, taught her how much to charge for various sexual acts, instructed her on how to post ads on websites advertising herself for commercial sex, and enticed her with love, affection, financial security, and a future together.  He described her as "young" and "childish."  He said she needed "lots of training" in commercial sex work and that she was a "blank page."  In short, he exploited her youth and insecurity.

At trial, Mr. Sparks was convicted of production of child pornography, on the basis of the four videos he created of himself penetrating the minor victim anally on July 27, 2019, recorded at the Nights Inn Motel in Oakland, California (Count One); and sex trafficking of a minor, on the basis of a continuous course of conduct from October 2018, when the minor victim was 15 years old, to July 20, 2019, when the minor victim was 16 years old, during which he picked up the minor from Merced and drove her to the Bay Area so she could engage in commercial sex acts (Count Two).

For the reasons set forth in this memorandum, the government respectfully recommends that the Court sentence Mr. Sparks to a term of imprisonment of 180 months, which is a downward variance from the Guidelines range of 235 to 293 months, and the mandatory minimum term for Count One.

## II.    FACTS

### A.    Procedural History

On July 17, 2020, Kenneth Sparks was charged by complaint with one count of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a).  Dkt 1.  On July 15, 2021, an Information was filed, charging Sparks with production of child pornography, in violation of 18 U.S.C. § 2251(a); sex

US SENTENCING MEMO                    1
CR-21-281-VC

trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1), (b)(2), (c); coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b); and receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). Dkt. 42. Sparks then changed his mind about waiving his right to indictment. Thus, on September 29, 2021, a federal grand jury returned a superseding indictment charging Sparks with production of child pornography, in violation of 18 U.S.C. § 2251(a); sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1), (b)(2), (c); coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b); and receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). Dkt. 50.

On November 21, 2022, the government dismissed the receipt of child pornography charge (Count Four). Dkt. 139. On March 20, 2023, a jury convicted Sparks of production of child pornography (Count One) and sex trafficking of a minor (Count Two). Dkt. 217. The jury acquitted Sparks of coercion and enticement of a minor (Count Three). *Id.*

### B.    Offense Conduct

On the morning of July 30, 2019, SFPD Officer Declan Flannery stopped a car for an expired registration. As he approached the car, he observed women's clothing, clear high-heeled stiletto shoes, condom wrappers, cash, and what appeared to be a blue woman's wig and provocative clothing. He also observed a female, later identified as the minor victim in this case, sitting in the front passenger seat; she was dressed in a short red lace dress. He informed the driver, later identified as Kenneth Orlando Sparks, that his car's registration was expired. After speaking with Mr. Sparks regarding the expired registration, Officer Flannery asked Mr. Sparks how he knew the passenger. Mr. Sparks said that he met her on Grindr, a social networking site for gay, bisexual, trans, and queer people. Officer Flannery was aware that the site was often used for sexual encounters. He also believed the items he had observed in the vehicle were indicia of prostitution and suspected that the occupants of the vehicle were engaged in, or about to engage in, commercial sex activities. Officer Flannery then walked to his car and conducted a record check.

After some time, and while trying to identify the passenger, the officers realized that she was a minor – 16 years old, born in 2003. Concerned that this minor was on a Grindr date with the 33-year-old driver, Officer Flannery contacted the Human Trafficking officers and was referred to Inspector

US SENTENCING MEMO                              2
CR-21-281-VC

Antonio Flores. Mr. Sparks was handcuffed and later transported to the police station. The minor was also transported to the police station so she could be properly identified. While speaking to Officer Flannery at the traffic stop, the victim admitted her involvement in commercial sex activities but denied Mr. Sparks' involvement. Later at the station, while speaking to Inspector Flores, the victim initially protected the defendant because she loved him: she denied that she had a sexual relationship with him and denied that he had any involvement or knowledge of her commercial sex activities. Inspector Flores explained to her that he would obtain a search warrant for her phone, and she subsequently consented to a search of her phone, which contained various text messages between her and Mr. Sparks discussing commercial sex activities. The phone also contained videos of her wearing the blue wig and being anally penetrated by a man. After Inspector Flores confronted her with the contents of her phone, she stated that the man in the videos was Mr. Sparks, that she had sexual relations with him, and that he would take her to different locations to have sex with different men for money.

A search of the car revealed the following: $333.00 in twenty, ten, and single dollar bills; nine unused condoms of varying brands and one empty condom packet; the blue wig; provocative clothing, including a pair of very short denim cut-off shorts, a see-through camisole, a black dress, clear plastic high heeled shoes, and four hotel key cards. Mr. Sparks was charged with state felony offenses relating to sexual conduct with a minor. A booking search of Sparks revealed US currency in twenty, ten, and single dollar bills, totaling $434.00.

Inspector Flores initially investigated the matter. He noticed that in the videos on the victim's phone, she was not the one holding the camera and that the videos were created on July 27, 2019, two days prior. He examined the device's location data and observed that on that same date, the phone had connected to a wireless hotspot called "Nights Inn Guest." Trial Exhibit 26. Inspector Flores visited the Nights Inn Motel, located in Oakland, and facilitated the retrieval of surveillance footage from multiple angles. Trial Exhibits 29-38; 64-96. One angle, Camera 6, gave an uninterrupted view of the room Mr. Sparks had booked, Room 104. *See* Trial Exhibit 28 (photo of door). A motel invoice showed that the room had been booked by Mr. Sparks from July 27 to July 28. Trial Exhibit 27.

The investigation was then handed over to the FBI. In August 2020, FBI Special Agent Taggart

US SENTENCING MEMO                                3
CR-21-281-VC

authored a search warrant for the contents of Mr. Sparks' phone, which had been seized when he was arrested. An examination of the phone showed at least seven separate iChat conversations with the minor victim, who used a succession of phone numbers and iCloud accounts in their texts and whom the defendant referred to variously as "Daughter," "Reddy," "Lil Reddy." The phone also held one SnapChat conversation with the minor victim, using the handle "PrinceSwag23," but only two of the messages were still visible. Multiple chats with Mr. Sparks' other contacts also included references to the minor victim, including chats with "Jalon," "Jay," and "Spella."

The recovered chats demonstrated that Mr. Sparks was facilitating and profiting from the minor victim's commercial sex acts. Specifically, they documented multiple times when Mr. Sparks drove to Merced, picked up the victim, transported her to the Bay Area, dropped her off in known areas of prostitution either in Oakland or San Francisco, kept track of her progress via text after dropping her off, and picked her back up afterwards. The text messages also show Mr. Sparks declining to transport her or see her for reasons unrelated to commercial sex, such as when she asked him to take her to Sacramento to see her brother. Trial Exhibit 40 at 37-40 (declining to help her get to LA; encouraging her to engage in commercial sex to get money for the train); Trial Exhibit 41 at 8-9 (declining to help her get to Sacramento), 12 (implying she should engage in commercial sex to make gas or train money); Trial Exhibit 44 at 34-35 & 43-45 (after offering to come to her town just to see her, changing his plan and refusing to come unless the victim either comes with him to the Bay or goes with him to a "blade" in her town).

In the texts, Mr. Sparks asked that the victim allow him to manage her money or give him access to his account on multiple occasions. *See* Trial Exhibit 41 at 5 (suggesting to the victim "let me handle and manage all the money and take care of u fully that way it makes sense for everybody"), Trial Exhibit 44 at 73 (telling the victim he wants access to her bank account or Cash app account "that way I know how much money u maken regularly and spending regularly so that way it's never issues win u ask for money because everything is clear in front of me"). He also frequently advised her on how to make money through sex. *See* Trial Exhibit 44 at 64 (telling the victim she should "start a premium and sell vids and pics prob u could make a lot off it," "Or Winever u get horney send me pics I'll save em and

US SENTENCING MEMO                                4
CR-21-281-VC

make a website for u one day so u ken earn from ur appearance win ur bored"); 84 (telling the victim she should "start a premium Snapchat" like his friend who "pays me for shooting [videos] with her she pay me 30 last week for one we made"); 87 (telling the victim he would rather show her how to make $28 than give it to her because "I rather reach u how to fish them keep throwing fish at u" and then explaining that for a premium Snapchat "u gotta keep posting frequently ppl want constant pics Sumtimes daily").

The chats also show that, in addition to transporting her to areas of prostitution, Mr. Sparks arranged dates for the minor victim, some of which he participated in as well.  In one particular exchange, Mr. Sparks responded angrily when the minor victim did not reply quickly enough when he texted her about a "rich guy … that wanna see u and would cash us both out," who he noted was kind of like another client, Jay, but "more paid."  Trial Exhibit 41 at 26.  He expressed anger at other points, as well, such as when, in response to the minor victim texting him that she is "hungry," he replied: "I'm on a budget right now.  Can't afford to feed ppl who not brining anything to the table.  Good luck to u.  Good luck in life."  Trial Exhibit 41 at 36-37.  After this text, the two discontinued contact for two months, until the minor victim texted Sparks that he "Can't Be Mad @ me Forever."  Trial Exhibit 42 at 1.  Even Mr. Sparks' ostensibly supportive messages implied that the minor victim's engaging in commercial sex would bring Sparks profit: "Ok cool makes sense I feel u on not worken all night if possible it would be cool to make money together tho if possible and make love and have fun and stuff maybe go to a movie and take pictures etc. build up our club."  Trial Exhibit 44 at 32; *see also id.* at 47 (telling the victim he wants to "take more road trips and do la San Diego Oregon etc together and with others blowing tree making money seeing things").  Another time, when the minor victim asked for money, Mr. Sparks replied that if she wanted $15 from him she needs to "[r]ecruit a sister to take similar pictures and come down to Oakland to make paper"; when the minor victim asked why, Mr. Sparks responded: "Because that's like double what u get for pics so I figure the best way to justify higher amount is high quality and variety."  Trial Exhibit 45 at 9-11.  His next text corrected what he appeared to perceive as a typo: "*quantity."  *Id.* at 11.

Mr. Sparks also discussed his arrangement with the minor victim in text exchanges with other

clients and friends.  Texting with one friend about the victim, he explained that when they work together, "I drive mostly and be waiting they be hustling I do Lyft top [*sic*] deliveries security just entrepreneur type stuff self employment."  Trial Exhibit 106 at 10 (PDF page 72).  He then explained to the same friend that "I prob be able to get some more girls eventually I just gotta keep my eyes open it's hard because some ppl live in different cities like my daughter is always down but she way in [name of town]." *Id.* at 11 (PDF page 74).  When "Jay," the less "paid" client discussed in the texts with the minor victim, mentioned to him in a text that the victim reached out, texting she was "hungry," the defendant replied:

> I apologize I think she crying for attention because if sumthin I recently posted. Just block her bro I don't wanna feed into her craving attention by even replying but she has no buisness really texting u. Block her it will humble her.
> …
> Yea she just text me I didn't even open the message. Very childish I will never give ur number out to a friend again I apologize it's all very embarrassing. I don't like drama or games or bullshit period. Sorry again.

Trial Exhibit 103 at 55-56 (PDF pages 137-38).

Mr. Sparks' facilitation of the victim's commercial sex, on multiple occasions from October 2018 until their arrest on July 30, 2019, through his transport of her and arrangement of dates for her formed the basis of his conviction for sex trafficking of a minor.

The phone data also included multiple videos of the minor victim.  One video, taken September 21, 2018, when the minor victim was 15 and had only just met Mr. Sparks, depicts a man having anal sex with the minor victim.  *See* Trial Exhibits 55 & 216.  For purposes of trial, Mr. Sparks stipulated that the people in the video were him and the victim; the description in the stipulation also made clear that he had recorded the video.  Trial Exhibit 250.  Other videos, scatological pornography depicting the minor victim at times urinating and at times defecating on camera, were sent to Mr. Sparks at his request in exchange for money.  *See* Trial Exhibits 57, 58, 59, 60, 230, 231, & 232.

The four pornographic videos depicting anal sex found by Inspector Flores on the minor victim's phone were recorded on her phone a few days prior.  Although Mr. Sparks' face was not visible in those videos, the FBI analyzed surveillance footage recovered from the Nights Inn Motel to confirm that it

US SENTENCING MEMO                                 6
CR-21-281-VC

was indeed him in them, as the victim had told Inspector Flores.  A comparison of the footage with the metadata of those videos demonstrated that at the time those videos were filmed, the minor victim was together with Mr. Sparks in Room 104 of the Nights Inn Motel.  For purposes of trial, Mr. Sparks also stipulated that the people in the videos were him and the victim; the descriptions in the stipulations also made clear that he had recorded the videos.  Trial Exhibit 250.  These videos formed the basis of Mr. Sparks' conviction for production of child pornography.  While they were together at the Nights Inn Motel on July 27, 2019, Mr. Sparks also helped the victim post an ad on Megapersonals advertising her for commercial sex activities and listing her age as 21.  Trial Exhibit 47.  The metadata from Mr. Sparks' phone shows he accessed the Megapersonals website at the same time that the victim's ad was posted and (based again on a comparison with the surveillance footage) while they were both in Room 104.  Exhibit 98.

At trial, the victim testified that when she initially met Mr. Sparks, she lied to him about her age and told him that she was older than her actual age.  Over the course of their relationship, however, he learned that she was a minor.  *First*, there was an occasion when Diamond, the victim's friend, told Mr. Sparks that the victim was a minor.  Mr. Sparks acknowledged this fact in a text message sent on September 29, 2018:  "That girl said ur hella young and that the fbi was looken for u and ur big sis was threatening ppl over u being missing or sumthin."  Trial Exhibit 39 at 9.  He subsequently repeatedly asked for almost two weeks that she send him a picture of her ID, which she never did.  Ex. 40 at 12, 20-22, 77.  At trial, Mr. Sparks admitted that on that occasion Diamond told him that the victim was a minor, but he discounted that fact because it seemed to him that Diamond was saying crazy things.  *Second*, there were conversations between the victim and Mr. Sparks regarding her needing fake IDs, and, after one such conversation, she told him that she was a minor on Snapchat.  Notably, Mr. Sparks deleted his entire SnapChat account within a day of being released from SFPD jail.  Trial Exhibit 148.  *Third*, on June 4-5, 2019, during one of the trips where Mr. Sparks transported the victim to the San Francisco Blade, they met with another sex worker.  During that conversation, the other sex worker asked the victim her age and when the victim said that she was older than her actual age, Mr. Sparks told the victim, "Tell her your real age."  Text messages with the minor victim relating to that encounter are

in Trial Exhibit 44 at 20-22, including photos of the victim and the other sex worker from that night on the Blade, Trial Exhibits 50-52.

Also in evidence were text messages between Mr. Sparks and the other sex worker from the day following the encounter, in which he tells her that "Last nite was cool maybe one [d]ay win we go on a road trip we can bring sumbody with us that way the hotel cost be cheaper and maybe they kenjelp is [can help us] earn extra." Trial Exhibit 194 at 5. He wrote to the other sex worker that if she were "cooperative," a second female, such as the minor victim, was more likely to "fall in line and stuff and be willing to earn etc and in sum cases they will be willing to give everything they earn to us." *Id.* Evidence at trial also demonstrated that Mr. Sparks sent nude photos of the minor victim to another paying client the day before he and the minor victim were stopped by the police, advertising her for a "threesome." Trial Exhibit 102; *see also* Trial Exhibit 107 (containing notation by Mr. Sparks about his rate with regard to this client). Mr. Sparks also wrote multiple notes on his phone that described the minor victim's "youth" and her need for coaching and guidance to excel as a sex worker. *See* Trial Exhibit 107. Audio memos from Mr. Sparks' phone described the minor victim as a "soldier" and stated his intention to post her photos to his website. Trial Exhibits 169 & 188.

## III.   SENTENCING GUIDELINES CALCULATION

The government agrees with the Guidelines calculation in the PSR: the total offense level is 38 and the criminal history category is I, resulting in a range of 235-293 months. The minimum term of imprisonment for Count One is 15 years (180 months). The minimum term of imprisonment for Count Two is 10 years.

## IV.   DISCUSSION

### A.   Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Sentencing Guidelines. *See id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for

US SENTENCING MEMO                                    8
CR-21-281-VC

substantive reasonableness in light of the factors set out in Section 3553(a).  *See id.* at 991–93.

In arriving at the appropriate sentence, and in light of 18 U.S.C. § 3553(a), the Court should consider these factors applicable to this case, among others:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>
> (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (5) the need to provide restitution to any victims of the offense.

**B.    Recommended Sentence and Section 3553(a) Factors**

In light of the Section 3553(a) factors, the Court should vary down from 235 months and sentence Mr. Sparks to 180 months (15 years), which is the mandatory minimum term for Count One.

First, the nature and circumstances of the offense are serious.  For almost a year, Mr. Sparks engaged in the sex trafficking of a minor.  He made multiple trips from Merced to the Bay Area where he picked her up and drove her to and from the Blade in Oakland and San Francisco, as well as to private homes, so she could perform sex acts for money.  She paid him a portion of her earnings, for transporting her and helping her.  He was not a supportive boyfriend who was merely encouraging her career choice or being a good friend by providing rides.  He was exploiting her, advertising her to others, demeaning her to others, while promising her love and a good lifestyle if she would let him be her pimp.  He wanted to handle the money she made from the sex acts.  While she was on the blade, he kept track of her whereabouts and movements.  He expected to be consulted regarding her sexual activities.  In discussing her decision to do a double date with another sex worker with a customer, Mr. Sparks told the victim "u should of ask before u did that . . . get back to blade babe it show more respect win u ask before u dip off this prime time."  Trial Exhibit 45 at 36.  He expected her to continue walking the block and not to just stand there, as exhibited by his text to her on July 30, 2019 (hours before they

were pulled over by SFPD), "I don't know why u just standing there."  Trial Exhibit 45 at 52.  She testified that it was exhausting, especially because she wore high heels and worked all night.  He also maintained her involvement with love, affection, and financial security, telling her that she was "wifey material" (Tr. Ex. 41 at 16), that he loved her, and that they could be making money together and live together and never be broke (Tr. Ex. 41 at 5).  He called her a soldier (Tr. Ex. 169: "My daughter like a little soldier, and I'm hella proud of her").

He knew that she was a minor.  He knew she was in school (Tr. Ex. 39 at 2; Tr. Ex. 40 at 6, 12, 35).  He knew that she was transgender.  He knew she was troubled (she was on probation, Tr. Ex. 44 at 36).  He knew about her financial condition.  He knew she loved him.  And he exploited all of that.  Every time she asked for money or said that she was broke, he told her to prostitute herself, make sex videos, or start a premium Snapchat to post sex videos with other sex workers.  He solicited pictures and videos of her for his website, which was dedicated to promoting his teachings about sex work.  For example, when she said that she had an emergency and needed to go to Los Angeles because her sister was locked up, he told her to use Grindr to make money from sex.  Trial Exhibit 40 at 37-40.

He subjected her to humiliating acts (taking videos of herself urinating and defecating) for his sexual stimulation on two occasions.  On one occasion, he paid her $6 and, on another occasion, he paid her $8 in exchange for the videos.  On one occasion, he knew that she needed money for her sister, and he sent the money directly to the sister's Cash App account.  Trial Exhibit 59.  He clearly exploited the victim's situation – that she was poor and needed money.  The jury acquitted Mr. Sparks of Count Three, which was premised on the urination and defecation videos, and required proof of his actual knowledge of her age.  Mr. Sparks' phone contained the videos and proof of his payments to her.  Trial Exhibits 59 & 237.  The government is not asking the Court to consider acquitted conduct, but simply contending that he was aware of the dire financial situation she was in when he was transporting her to engage in commercial sex acts.

He knew that working on the Blade was dangerous.  For example, while she was on the Blade on October 12, 2018, the victim texted Mr. Sparks about "sweating" because of a shooting on the Blade.  Trial Exhibit 40 at 58, 59 ("They shootin out here").  In response, he told her that sometimes it can be

rough but "it's pretty calm for the most;" he also told her that she should have gone to the "real girl blade" (the biologically female blade) – which would be even more dangerous for a transgender person. *Id.* at 59, 61. He did not appear concerned for her personal safety and continued to transport her to the Blade on future occasions, including in June and July of 2019. In another text message, the victim said that a customer tried to steal her phone (*see* Tr. Ex. 40 at 68), and on another occasion, he texted her about a fight on the Blade (*see* Tr. Ex. 41 at 29 ("I saw that girl u got into a fight with this week and had a talk about it. . . she won't touch u again")). In fact, when he was pulled over, he possessed a gun and ammunition in his car. Despite the dangers, he encouraged her to continue working on the Blade and continued to transport her to the Blade.

Aside from trafficking her, he engaged in sex with her for his own sexual gratification and filmed four videos on July 27, 2019 and another video on September 21, 2018. Furthermore, he distributed her nude pictures to others in an effort to arrange commercial sexual encounters.

Second, the history and characteristics of the defendant call for a proportionate sentence. Mr. Sparks characterized his childhood as "stable, calm, and financially secure." PSR ¶ 89. He graduated high school with honors and was engaged in sports – cross country and track. PSR ¶ 92. He attended college and received a Bachelor of Art's degree. PSR ¶ 108. He was employed as a retail sales associate, warehouse worker, clerk, and then as a driver for Uber and Lyft. PSR ¶ 111-113. That he chose to engage in sex work was his prerogative – based on his trial testimony, it was a voluntary choice; he was not forced into it. But he also chose, as a 33-year-old man, to engage in the sex trafficking of a minor – one who was young, troubled, and in financial distress – and to make videos of himself engaging in anal sex with that minor. Her situation, contrasted against his situation, highlights her vulnerability.

That said, the government acknowledges countervailing factors that form the basis of its request for a downward variance from 235 months to 180 months. With respect to the nature and circumstances of the offense, the sex trafficking did not involve violence or force. Moreover, Mr. Sparks did not groom the minor victim into engaging in sex acts for the first time; she had been to the Oakland Blade once before she met him. Although she was a novice and he taught her various aspects of the work, he

US SENTENCING MEMO                    11
CR-21-281-VC

did not introduce her in the first instance. Moreover, the government is not aware of other instances in which Mr. Sparks attempted to or did pimp out any minors. Additionally, the defendant has no criminal history – no convictions and no arrests. Notably, the PSR notes that according to JSIN, the average length of imprisonment for other defendants convicted of such offenses is 219 months. PSR ¶ 139.

Given the nature and circumstances of the offense, the length of time for the course of conduct, the federal interest in protecting minors from sex trafficking and exploitation, a sentence of 180 months is appropriate "to promote respect for the law" and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). For these reasons, the government believes that granting a 55-month downward variance from the low end of his Guidelines range, for a sentence of 180 months, to run concurrent with Count Two is appropriate.

### C.    Restitution

Restitution is mandatory in this case. 18 U.S.C. § 2259. Because the victim's losses have not been fully ascertained yet, the government requests a restitution hearing 90 days from the sentencing hearing. If the parties agree to the restitution amount, they will file a stipulation.

## V.    CONCLUSION

Based upon a consideration of the Sentencing Guidelines, all of the circumstances of this case, and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court sentence Mr. Sparks to a term of imprisonment of 180 months as to Count One, which is a 55-month downward variance from the low end of his Guidelines range (235-293 months), to be served concurrently with Count Two.

DATED: September 6, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney


/s/
ILHAM A. HOSSEINI
ALETHEA M. SARGENT
Assistant United States Attorneys

US SENTENCING MEMO                    12
CR-21-281-VC